IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | |
|---|---|
| JEFFREY SHAYNE GOTREAUX,<br><br>      Plaintiff,<br>vs.<br><br>STEVENS TRANSPORT, INC.,<br><br>      Defendant. | No. 1:23-CV-00159-MJT |

### REPORT AND RECOMMENDATION GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION

This case is assigned to the Honorable Michael J. Truncale, United States District Judge. On November 8, 2023, Judge Truncale referred Defendant Stevens Transport, Inc. ("Stevens")'s *Motion to Compel Arbitration* (Doc. No. 12) to the undersigned United States Magistrate Judge for consideration and disposition. Doc. No. 48.

The instant motion arises from a dispute over whether Plaintiff Jeffery Shayne Gotreaux ("Gotreaux") must reimburse Stevens for employee benefits that Stevens paid to Gotreaux after he was injured in a motor vehicle accident while working for Stevens. After careful review of the filings and applicable law, the undersigned recommends that Stevens' motion should be granted because the instant Arbitration Agreement is enforceable under the Texas General Arbitration Act. *See* TEX. CIV. PRAC. & REM. CODE § 171.002.

### I.    Factual and Procedural Background

According to the facts alleged in Gotreaux's *Amended Complaint*, Gotreaux is a resident of Jefferson County, Texas and worked for Stevens as a commercial truck driver. Doc. No. 26 at 3, ¶¶ 6–7. Stevens is a truckload carrier operating across the United States. *Id.* at 7. According to the facts alleged in Gotreaux's *Response*, on December 22, 2017, Gotreaux was badly injured

in a motor vehicle collision that occurred during the course and scope of his employment with Stevens. Doc. No. 19 at 3, ¶ 3. Following the collision, Stevens paid $150,931.67 in employee benefits to Gotreaux pursuant to Stevens' "Welfare Benefit Plan." Doc. No. 26 at 4, ¶¶ 11–12. This plan is governed by the Employee Retirement Income Security Act of 1974 ("ERISA").[1] Doc. No. 19 at 3, ¶ 4. At some point following the collision, Gotreaux initiated a personal injury lawsuit against a liable third party that was involved in the collision. Doc. No. 26 at 4, ¶ 12. Thereafter, in November 2018, Stevens began asserting a first priority lien and right of recovery of any funds Gotreaux may recover in his personal injury lawsuit pursuant to Stevens' Welfare Benefits Plan. *Id.*, ¶¶ 13, 25. Stevens asserts that it has a right to full reimbursement of the benefits paid to Gotreaux pursuant to ERISA. *Id.* ¶¶ 12, 26. Gotreaux disagrees. *See* Doc. No. 5; Doc. No. 26.

Gotreaux and Stevens signed an Arbitration Agreement ("Agreement") on November 30, 2017, which provides, in part, that "[t]he Company and I mutually consent to the resolution by arbitration of all claims or controversies ("claims"), whether or not arising out of my employment (or its termination), that the Company may have against me or that I may have against the Company and/or its officers, directors, employees or agents." Doc. No. 12-1 at 2. Additionally, the Agreement provides that "[t]he arbitrator shall apply the substantive law (and the law of remedies, if applicable) of the State of Texas, or federal law, or both, as applicable to the claim(s) asserted." *Id.* at 5. The instant motion seeks to compel arbitration pursuant to the provisions of the Agreement. Doc. No. 12.

On March 27, 2023, Gotreaux filed a declaratory judgment action in state court seeking a ruling that Stevens is not entitled to reimbursement for the benefits. Doc. No. 5. On April 25,

---

[1] ERISA is codified at 29 U.S.C. § 1001.

2023, Stevens removed the case to this court. Doc. No. 1. Thereafter, on June 1, 2023, Stevens filed the instant *Motion to Compel Arbitration* seeking to compel this dispute to arbitration pursuant to the Arbitration Agreement signed by both parties. Doc. No. 12. On June 15, 2023, Gotreaux filed his *Response*. Doc No. 19. On June 22, 2023, Stevens filed its *Reply*. Doc. No. 22. On June 29, 2023, Gotreaux filed his *Sur-Reply*. Doc. No. 24.

## II. Legal Standard

Courts apply a two-step inquiry to determine whether a party should be compelled to arbitrate. *JP Morgan Chase & Co. v. Conegie ex rel. Lee*, 492 F.3d 596, 598 (5th Cir. 2007). The first step is determining whether the parties agreed to arbitrate the dispute. *Id.* "Answering this question requires considering two issues: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Carey v. 24 Hour Fitness, USA, Inc.*, 669 F.3d 202, 205 (5th Cir. 2012). The second step is determining whether any federal statute or policy renders the claims non-arbitrable. *JP Morgan Chase & Co.*, 492 F.3d at 598. When determining whether the dispute falls within the scope of the arbitration agreement, ambiguities are resolved in favor of arbitration. *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 475 (1989). Finally, "a party seeking to invalidate an arbitration agreement bears the burden of establishing its invalidity." *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004).

## III. Discussion

In its *Motion to Compel Arbitration*, Stevens contends that the Agreement is valid, the dispute in this matter falls within the scope of the Agreement, and no statutes render the dispute non-arbitrable. Doc. No. 12 at 3–4. Therefore, according to Stevens, the Agreement is a valid

arbitration agreement and this court should accordingly compel arbitration. *Id.* at 4. Gotreaux principally raises three arguments in response. *See generally* Doc. No. 19; Doc. No. 24.

First, Gotreaux challenges the validity of the Agreement. He alleges that: (1) under Texas common law, Texas courts refuse specific enforcement of agreements to arbitrate future disputes; (2) the Agreement is invalid for lack of consideration; and (3) the Agreement is invalid because there was no proper "meeting of the minds." Doc. No. 19 at 10–11, ¶¶ 21–22; Doc. No. 24 at 7–8, ¶¶ 15–18. Second, Gotreaux contends that the Agreement is an arbitration agreement in a contract of employment of a worker engaged in interstate commerce, which is exempt from the FAA under 9 U.S.C. § 1. Doc. No. 19 at 5–6, ¶¶ 10–14. Third, Gotreaux contends that this action is a "personal injury claim" that is exempt under the Texas General Arbitration Act ("TAA")[2], which provides that in cases involving personal injury claims, an arbitration agreement must be signed by both parties and their attorneys to be enforceable. *Id.* at 8–9, ¶ 17. The undersigned will discuss each of Gotreaux's contentions in turn.

### A. Challenges to the Agreement's Validity

Gotreaux contends that the Agreement should not be enforced because (1) under Texas common law, Texas courts refuse specific enforcement of agreements to arbitrate future disputes; (2) the Agreement lacked consideration; and (3) no "meeting of the minds" occurred between the parties. Doc. No. 19 at 10–11, ¶¶ 21–23; Doc. No. 24 at 7–8, ¶¶ 15–18.

As an initial matter, Stevens contends that questions regarding the validity of an arbitration agreement "are to be resolved by the arbitrator in the first instance, not by a federal or state court," citing *Preston v. Ferrer*, 552 U.S. 346, 340 (2008). Doc. No. 22 at 2. Stevens' reliance on *Preston*

---

[2] The Texas General Arbitration Act (codified at TEX. CIV. PRAC. & REM. CODE § 171.002) is commonly abbreviated as "TAA" by most courts. *See, e.g.*, *In re Nexion Health at Humble, Inc.*, 173 S.W.3d 67, 69 (Tex. 2005), *as supplemented on denial of reh'g* (Oct. 14, 2005).

is misplaced because *Preston* involved a dispute over whether the validity of an arbitration agreement should be litigated in an arbitral forum or before a California state executive agency. 552 U.S. at 352. The Court specifically held that "when parties agree to arbitrate all questions arising under a contract, state laws lodging primary jurisdiction in another forum, whether judicial or administrative, are superseded by the FAA." *Id.* at 349–50. The Agreement at issue here does not involve a state law mandating primary jurisdiction in a different forum. Moreover, *Preston* does not support the broad proposition that any question as to the validity of an arbitration agreement must be resolved by an arbitrator in the first instance and not a court. Thus, the undersigned may properly consider the validity of the Agreement in this case.

Though the Federal Arbitration Act ("FAA") reflects a "liberal federal policy favoring arbitration," this policy "does not apply to the determination of whether there is a valid agreement to arbitrate between the parties." *Carey v. 24 Hour Fitness, USA, Inc.*, 669 F.3d 202, 205 (5th Cir. 2012). When determining the validity of an arbitration agreement, courts apply "ordinary state law principles that govern the formation of contracts." *Id.* The undersigned will consider Gotreaux's defenses to the formation of a valid agreement between himself and Stevens.

First, Gotreaux contends that Texas courts refuse specific enforcement of agreements to arbitrate future disputes, citing *L.H. Lacy Co. v. Lubbock*, 559 S.W.2d 348, 352 (Tex. 1977). Doc. No. 19 at 10, ¶ 21. This argument misstates the significance of *Lacy*. In *Lacy*, the court analyzed an arbitration agreement contained in a construction contract. 559 S.W.2d at 350. At that time, the TAA exempted construction contracts from its coverage, so the parties disputed whether the arbitration award could still be enforced under Texas common law, as it was clearly unenforceable under the TAA. *Id.* Furthermore, *Lacy* discusses arbitration agreements *not* governed by the TAA that are instead governed under Texas common law. *Id.* at 350 ("[b]ecause the Texas General

5

Arbitration Act exempts construction contracts from its coverage, the Act is not applicable here"). Additionally, "*Lacy* simply does not speak to the common law's application to arbitration agreements that *are* governed by the TAA." *Hoskins v. Hoskins*, 497 S.W.3d 490, 495 (Tex. 2016). As discussed extensively below[3], the Agreement here is ultimately governed by the TAA, and thus, Texas common law cannot serve as a basis for invalidating the Agreement. *Lacy* does not stand for the broad proposition that under Texas common law, courts refuse to enforce agreements to arbitrate future disputes.

Second, Gotreaux contends that the Agreement is invalid because it lacked consideration. Doc. No. 19 at 11, ¶ 22; Doc. No. 24 at 7, ¶ 16. That is incorrect. Here, both Gotreaux and Stevens' Authorized Company Representative signed the Agreement on November 30, 2017. Doc. No. 12-1 at 8. The signature of both parties on the Agreement indicates mutual agreement to arbitrate claims. *See In re 24R, Inc.*, 324 S.W.3d 564, 566 (Tex. 2010) (noting that "[m]utual agreement to arbitrate claims provides sufficient consideration to support an arbitration agreement"). Accordingly, the Agreement is not invalid due to lack of consideration.

Finally, Gotreaux contends that the Agreement is invalid because there was no proper "meeting of the minds" between him and Stevens. That is also incorrect. Here, Gotreaux signed the Agreement. Doc. No. 12-1 at 8. Because Gotreaux signed the Agreement, the court presumes that Gotreaux read the agreement. *See Jones v. Halliburton Co.*, 625 F. Supp. 2d 339, 345 (S.D. Tex. 2008), *aff'd and remanded*, 583 F.3d 228 (5th Cir. 2009) (citing *EZ Pawn Corp. v. Mancias*, 934 S.W.2d 87, 90 (Tex. 1996)). Additionally, Gotreaux has not alleged that he was unaware that he was signing an arbitration agreement. *See, e.g.*, *Am. Heritage Life Ins. Co. v. Lang*, 321 F.3d 533, 538 (5th Cir. 2003) (finding that defendant who could not read did not know he was signing

---

[3] *See infra* Section C of this Report.

an arbitration agreement, and thus, no meeting of the minds occurred). Accordingly, the arbitration provision is not invalid due to an improper "meeting of the minds."

In sum, Gotreaux has failed to raise any valid grounds for invalidating the Agreement. Accordingly, the undersigned finds that the Agreement is a valid arbitration agreement between the parties.

### B.  Exemption of the Arbitration Agreement Under the Federal Arbitration Act

Certain arbitration agreements are exempt from the FAA under 9 U.S.C. § 1, which provides that "nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." Thus, the exemption applies if two requirements are met. First, the arbitration agreement must be contained in a "contract[] of employment." *Id.* Second, as relevant here, the employee must be within a "class of workers engaged in foreign or interstate commerce." *Id.* The second element is undisputed—the Agreement provides that "I understand and agree that the Company is engaged in transactions involving interstate commerce and that my employment involves such commerce." Doc. No. 12-1 at 6. Thus, the parties only dispute whether the Agreement is part of Gotreaux's "contract of employment" with Stevens. "[A] court should decide for itself whether § 1's 'contracts of employment' exclusion applies before ordering arbitration." *New Prime Inc. v. Oliveira*, 139 S. Ct. 532, 537–38 (2019).

Stevens contends that the Agreement does not constitute a "contract of employment" for purposes of FAA exemption because "nothing about the Arbitration Agreement employs Gotreaux, and nothing about the Arbitration Agreement alters Gotreaux's terms and conditions of employment." Doc. No. 12 at 6–7. In response, Gotreaux contends that the Agreement does constitute a contract of employment because it names Gotreaux as an "employee" and references

7

his "employment" throughout. Doc. No. 19 at 6–8. Further, Gotreaux alleges that he was required to sign the Agreement as a condition of his employment. Doc. No. 19-1 at 2. Thus, according to Gotreaux, because the Agreement is part of Gotreaux's contract of employment and he is a worker engaged in interstate commerce, the Agreement is exempt under the FAA and the court cannot compel arbitration under the FAA. Doc. No. 19 at 5–7, ¶¶ 10–14.

While there is no specific evidence of an employment contract between Stevens and Gotreaux in the record, based on the facts alleged and the weight of relevant authority, the Agreement here is likely exempt under § 1 of the FAA. First, Gotreaux alleges that the Agreement "was a part of the employment package with Defendant Stevens Transport, Inc. and [his] signature thereon was required as a condition of [his] employment." Doc. No. 19-1 at 2. Additionally, the Agreement was signed on the same day that Gotreaux began his employment with Stevens: November 30, 2017. See Doc. No. 26 at 4, ¶ 9; Doc. No. 12-1 at 8. Moreover, a United States District Court previously held that Stevens' arbitration agreement—the same agreement at issue here—was subject to the FAA § 1 exemption in a dispute involving an interstate truck driver employed by Stevens—the same position Gotreaux held with the company. *See Parr v. Stevens Transp., Inc.*, No. 3:19-CV-2378-S, 2020 WL 2200858, at *2 (N.D. Tex. May 5, 2020) (noting that "Plaintiffs are interstate truck drivers who qualify for the Federal Arbitration Act's 'transportation worker' exemption").

Other courts have recognized that when an individual's employment is made conditional on them signing an arbitration agreement, that agreement is considered part of the individual's "contract of employment." *See, e.g., Brown v. Nabors*, 339 F.3d 391, 392 (5th Cir. 2003) (holding that an arbitration agreement sent by mail to all employees was part of employee's "contract of employment" for FAA exemption purposes because the employee's continued employment was

8

conditioned on accepting the agreement); *Shanks v. Swift Transp. Co. Inc.*, No. CIV.A. L-07-55, 2008 WL 2513056, at *3 (S.D. Tex. June 19, 2008) (holding that arbitration agreement formed part of employee's employment contract because plaintiff's employment was conditioned on him signing the agreement, the agreement was between plaintiff and his employer, and the agreement provided benefits tied to continued employment); *Carr v. Transam Trucking, Inc.*, No. 3-07-CV-1944-BD, 2008 WL 1776435, at *2 (N.D. Tex. Apr. 14, 2008) (holding that arbitration agreement formed part of employee's employment contract because it was a condition of his commencing employment with defendant).

The cases relied on by Stevens in arguing that the Agreement is not exempt under the FAA are distinguishable from the facts here. In *Garza Nunez v. Weeks Marine, Inc.*, the court held that an arbitration agreement provided to the plaintiff by his employer after the plaintiff's injury did not qualify as a contract of employment under the FAA because, among other reasons, acceptance of the agreement was not a condition of Plaintiff's continued employment. No. CIV. A. 06-3777, 2007 WL 496855, at *3 (E.D. La. Feb. 13, 2007). Similarly, in *Terrebonne v. K-Sea Transp. Corp.*, the court held that a post-injury arbitration agreement provided to the plaintiff did not qualify as a contract of employment because it did not employ the plaintiff or modify his contract of employment in any way. 477 F.3d 271, 278 (5th Cir. 2007).

The arbitration agreements in *Garza Nunez* and *Terrebonne* were executed post-injury, while the Agreement here was executed the same day Gotreaux began work for Stevens. This is a significant factual distinction because the agreements in *Garza Nunez* and *Terrebonne* did not make the plaintiff's employment conditional on the plaintiff signing it, whereas here, Gotreaux alleges he was required to sign the Agreement as a condition of his employment. Doc. No. 19-1 at 2. Finally, Stevens has not identified analogous authority analyzing a situation where an

9

arbitration agreement signed as a condition to an individual beginning employment, as Gotreaux's was, is not considered a "contract of employment" under the FAA.

Based on the weight of authority and the facts alleged in the record, the Agreement here is likely exempt under the FAA. However, without explicit proof of the actual employment contract between Stevens and Gotreaux (if such a contract exists) or proof of the documents included in Stevens alleged "employment package," the undersigned is reluctant to definitively characterize the Agreement as part of Gotreaux's "contract of employment." Nevertheless, even if the undersigned proceeds under the assumption that the Agreement is exempt under the FAA, Texas state arbitration law still governs the Agreement. *See Shanks*, 2008 WL 2513056, at *4 (citing *Garza Nunez*, 2007 WL 496855, at *7). Even if the Agreement is exempted from the FAA, "the effect is merely to leave the arbitrability of disputes in the excluded categories as if the [FAA] had never been enacted." *Id.* (internal quotations omitted).

Based on the plain language of the Agreement, both the FAA and the TAA apply to the Agreement here. The Agreement provides: "[t]he arbitrator shall apply the substantive law (and the law of remedies, if applicable) *of the State of Texas*, or federal law, or both, *as applicable* to the claim(s) asserted." Doc. 12-1 at 4 (emphasis added). Thus, the TAA applies here even if the FAA does not. *See Moody Nat'l Grapevine MT, LP v. TIC Grapevine 2, LP*, 651 S.W.3d 450, 455 (Tex. App.—Houston [14th Dist.] 2022, pet. denied) (noting that "[i]f an arbitration agreement does not specify whether the FAA or the TAA applies, but states that it is governed by the laws of Texas, both the FAA and the TAA apply unless the agreement specifically excludes federal law").

In sum, regardless of whether the Agreement is exempt under the FAA, the Agreement is still enforceable under the TAA, as long as it falls within the TAA's provisions. Thus, the undersigned must next consider whether the Agreement here is enforceable under Texas law.

### C. Exemption of the Agreement Under the Texas General Arbitration Act

Gotreaux contends that his declaratory judgement action is non-arbitrable because it is a "personal injury claim." Doc. No. 19 at 8–9, ¶ 17. Under the TAA, a "claim for personal injury" is not arbitrable unless an arbitration agreement is signed by both parties and their attorneys. TEX. CIV. PRAC. & REM. CODE § 171.002(a)(3). In response, Stevens contends that Gotreaux's claim cannot be characterized as a personal injury claim because it is a declaratory judgment action regarding a contract dispute. Doc. No. 22 at 7–8. Thus, according to Stevens, Gotreaux's claim is arbitrable because the Agreement is not exempt from the TAA, and the dispute otherwise falls within the scope of the parties' Agreement. The undersigned agrees with Stevens.

Based on the facts alleged in Gotreaux's original *Complaint* (Doc. No. 5) and operative *Amended Complaint* (Doc. No. 26), the specific dispute in this case is whether Stevens is entitled to reimbursement for benefits it paid, not whether Stevens is liable for Gotreaux's injury. Despite Gotreaux's characterization of this dispute as a claim for personal injury in his *Response* (Doc. No. 19), his own *Complaint* (Doc. No. 5) suggests otherwise. For instance, Gotreaux characterized his claim as a "dispute as to right and entitlement to certain settlement funds recovered by him on account of a serious and permanent personal injury" in his original *Complaint*. Doc. No. 5 at 1, ¶ 2. Additionally, Gotreaux alleged that he "seeks a declaration that STEVENS has no lien and/or right to subrogation against any personal injury settlement monies awarded to Plaintiff." *Id.*, ¶ 3.

There is a distinction between a claim for personal injury and Gotreaux's claim here. As a general matter, personal injury claims assess a defendant's liability for personal injuries suffered by the plaintiff. In contrast, here, Gotreaux's claim seeks a ruling that Stevens has no right to

reimbursement for benefits paid out of an ERISA-governed benefits plan.  At its core, this is a dispute over the rights and obligations of the parties under a contract.  Further, courts characterize disputes over ERISA-related benefits as contractual in nature.  *See*, *e.g.*, *Washington v. Murphy Oil USA, Inc.*, 497 F.3d 453, 458 (5th Cir. 2007).  While Gotreaux is correct that this entire case stems from the personal injuries he suffered in the course and scope of his employment with Stevens, that is not enough to characterize Gotreaux's claim as a "personal injury claim" because he is not alleging Stevens' liability for his injuries.[4]

      Moreover, Gotreaux has not cited any authority characterizing any similar dispute over reimbursement for employee benefits paid to an employee following that employee's injury as a "personal injury claim."   He instead cites several cases that all involve a defendant's liability for a plaintiff's personal injuries caused by the defendant's misconduct, which are easily distinguishable from the specific dispute at issue here.  *See In re Godt*, 28 S.W.3d 732, 738–39 (Tex. App.—Corpus Christi-Edinburg 2000, no pet.)[5] (involving legal malpractice action, which Texas courts recognize as a type of personal injury claim); *In re Bison Bldg. Materials, Ltd.*, No. 01-07-00003-CV, 2008 WL 2548568, at *9 (Tex. App.—Houston [1st Dist.] June 26, 2008, orig. proceeding) (characterizing plaintiff's negligence claim against defendant for personal injuries as a personal injury claim under the TAA); *APC Home Health Servs., Inc. v. Martinez*, 600 S.W.3d 381, 391 (Tex. App.—El Paso 2019, no pet.) (characterizing plaintiff's claims against defendant for injuries that occurred in a workplace accident as personal injury claims under the TAA).

---

[4] Gotreaux filed suit against a liable third party for his personal injuries.  *See* Doc. No. 26 at 4, ¶ 12.

[5] *In re Godt* presents a minority view among Texas Courts of Appeals.  The majority view is that legal malpractice actions are not claims for personal injury subject to exclusion under the TAA.  *See*, *e.g.*, *Chambers v. O'Quinn*, 305 S.W.3d 141, 148 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).

The cases Gotreaux cites are not analogous to the facts here because each case concerns an employer's liability for injuries. In contrast, Stevens and Gotreaux dispute whether Stevens' ERISA-governed Welfare Benefit Plan provides that Stevens is entitled to reimbursement for benefits paid. The undersigned cannot plausibly characterize this dispute as a "personal injury claim" under the TAA. Gotreaux does not offer any other arguments why the TAA does not govern the Agreement. Accordingly, the undersigned finds that Gotreaux's claim is not a personal injury claim, and thus, the TAA governs the Agreement.

A federal court may compel arbitration under the TAA. *See ASW Allstate Painting & Const. Co., Inc. v. Lexington Ins. Co.*, 188 F.3d 307, 310 (5th Cir. 1999). "To compel arbitration under the [TAA], Defendants must show that the employees received notice of the binding arbitration agreement, accepted the agreement, and raise claims that fall within the scope of the agreement." *Long v. BDP Int'l, Inc.*, 919 F. Supp. 2d 832, 850 (S.D. Tex. 2013) (citing *In re Dallas Peterbilt, Ltd., L.L.P.*, 196 S.W.3d 161, 162–63 (Tex. 2006)). Here, Gotreaux received notice of the Agreement and accepted it by signing it. Doc. No. 12-1 at 8. Additionally, the dispute over whether Stevens is entitled to reimbursement for benefits paid to Gotreaux out of its Welfare Benefit Plan is within the scope of the Agreement because the parties agreed to "the resolution by arbitration of all claims or controversies ("claims"), whether or not arising out of my employment (or its termination), that the Company may have against me or that I may have against the Company and/or its officers, directors, employees, or agents." See Doc. No. 12-1 at 2. Thus, this court can compel arbitration of this dispute under the TAA.

### IV. Conclusion

The undersigned recommends that Defendant Stevens Transport, Inc.'s *Motion to Compel Arbitration* (Doc. No. 12) should be **GRANTED** and that the parties be **ORDERED** to resolve

13

the presented claim in an arbitration conducted in accordance with the terms of the Arbitration Agreement.

## V.     Objections

Pursuant to 28 U.S.C. § 636(b)(1)(C), each party to this action has the right to file objections to this Report and Recommendation. Objections to this Report must (1) be in writing, (2) specifically identify those findings or recommendations to which the party objects, (3) be served and filed within 14 days after being served with a copy of this Report, and (4) be no more than eight (8) pages in length. *See* 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b)(2); E.D. TEX. CIV. R. CV-72(c). A party who objects to this Report is entitled to a *de novo* determination by the United States District Judge of those proposed findings and recommendations to which a specific objection is timely made. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b)(3).

A party's failure to file specific, written objections to the proposed findings of fact and conclusions of law contained in this Report, within 14 days of being served with a copy of this Report, bars that party from: (1) entitlement to *de novo* review by the United States District Judge of the findings of fact and conclusions of law, and (2) appellate review, except on grounds of plain error, of any such findings of fact and conclusions of law accepted by the United States District Judge. *See Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

SIGNED this 29th day of February, 2024.

Zack Hawthorn
United States Magistrate Judge